**UNITED STATES of America,**
**Appellee,**

v.

**Harold BRIDGES, Defendant–**
**Appellant,**

No. 01–1277.

United States Court of Appeals,
Second Circuit.

March 18, 2003.

Daniel J. Ollen, New York, NY, for Defendant–Appellant.

Christine Chi, Assistant United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Present: POOLER, SACK, and B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 18th day of March, two thousand and three.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is **AFFIRMED.**

Harold Bridges appeals from the May 24, 2001, judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*) sentencing him to life imprisonment after a jury had convicted Bridges of conspiracy to distribute PCP. The district court held a seven day jury trial in which the Government presented testimony from Errol Card, a cooperating witness who was a customer of Bridges, and from law enforcement officers who had stopped or surveilled Bridges and other members of the conspiracy. The government also presented recordings of conversations between Bridges and Card. The defense did not call any witnesses at trial. Besides the general verdict of guilty, the jury also returned a finding pursuant to a special verdict form that Bridges's offense involved over one kilogram of PCP. At sentencing, the district court sentenced defendant to life imprisonment in accordance with the recommendation in the Pre-sentence Investigation Report ("PSR"). Two previous felony informations filed against Bridges, combined with a finding that the offense involved at least one kilogram of PCP, resulted in a mandatory minimum sentence of life imprisonment for Bridges. Bridges makes a claim of improper admission of evidence, alleges that errors in the judge's findings on the amount of PCP involved led to an improper sentence, and argues that the government turned over certain evidence late in violation of its discovery obligations under the Federal Rules of Criminal Procedure.

■   Bridges first contends that the district court improperly admitted evidence regarding discovery of a handgun. One of the arresting officers testified that he had found a .357 caliber handgun in a closet in Bridges's residence. Bridges and his com-

738

mon law spouse both lived at the residence and the closet contained both men's and women's clothing. Bridges argues that the government introduced the existence of the gun solely for the improper purpose of demonstrating Bridges's criminal propensity. *See United States v. Muniz*, 60 F.3d 65, 69 (2d Cir.1995). Bridges admits that this Court has approved testimony on the existence of weapons in narcotics cases because weapons are often tools of the trade in the narcotics business, *see, e.g., United States v. Vegas*, 27 F.3d 773, 778–79 (2d Cir.1994). However, Bridges contends that *Vegas* and other cases are distinguishable, because in his case, the link between the handgun and his involvement in narcotics trafficking was too tenuous. In support of this argument, Bridges notes that 1) there was no evidence in the record that Bridges carried a gun; 2) there were no narcotics or other drug paraphernalia found near the gun; 3) cash found near the gun belonged not to Bridges, but to his common law wife; and 4) the handgun was not loaded and no ammunition was recovered. The district court was initially reluctant to allow testimony about the gun, but agreed that it had probative value after Card's testimony, which included a description of how he and Bridges had once been robbed of drug trafficking money at gunpoint. The district court explained that it had "rethought this gun situation" and believed that Card's testimony implicated Bridges "as a larger player engaged in significant PCP transactions and having been part of at least one robbery of drug proceeds where guns were utilized."

We review a district court's decision to admit evidence for an abuse of discretion. *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir.2001). We find that the district court did not abuse its discretion in admitting testimony on the existence of the gun, since the probative value of the gun in linking Bridges to narcotics trafficking outweighs any prejudicial effect from the testimony, especially since the gun itself was not admitted into evidence.

Bridges also challenges the district court's finding on the amount of PCP involved in the conspiracy. Bridges argues that the district court failed to make the required independent findings on the amount of PCP involved and instead relied on the PSR's recommendation that the conspiracy involved at least 30 kilograms of PCP. He also cites Card's testimony suggesting that the PCP delivered by Bridges was of poor quality, and possibly not even PCP at all. In addition, Bridges claims that the district court erroneously believed that it could not reconsider the jury's special verdict on the quantity of PCP involved.

■ The PSR recommended a life sentence since this was the mandatory minimum sentence required because of Bridges's two prior felony informations and the instant offense involving at least a kilogram of PCP. Early in the sentencing colloquy, the district court acknowledged that a life sentence would be appropriate given a finding that the offense involved any amount of one kilogram or more. The court indicated that it believed the evidence supporting the jury's finding was very clear, noting that the jury "found over one kilo because it was necessary in terms of what the sentencing might turn out to be. It had nothing to do with how many they had found. If I had put on there an interrogatory saying how many had [t]he[y] found, which I didn't do because there was no need to do it, I assure you it would not have been one." The district court, in approving the PSR's recommendation that the conspiracy included the distribution of over 30 kilograms, noted:

[I]t was pretty clear to me that you were ... a significant player in what transpired during this period of the conspiracy, involving hundreds of gallons of at least the major ingredients, if not the material itself, for a controlled substance PCP. And since the government need only to have proven, in order to reach, accompanied by your criminal history category, this offense level of 38, need only have shown that there was a conspiracy in which you participated and that that conspiracy included the distribution of more than 30 kilos, it seems to me that we really don't have to get into the nitty-gritty of whether there were any kinds of extenuating circumstances insofar as the specific ingredients of what you, on occasion, transported because the evidence is ample and accompanied by a variety of consensual telephone conversation transcripts."

We reject Bridges's sentencing challenge. Bridges's arguments about the district court's failure to make independent findings and to reconsider the jury verdict find no factual support in the record. The district court independently considered the jury's finding, since it found that the offense involved a great deal more than the one kilogram found by the jury. Moreover, the court did not impermissibly rely on the PSR when it found that the offense involved 30 kilograms, a finding which finds ample support in the trial record, as noted by the district court. Nor does Card's testimony about the poor quality of the PCP delivered by Bridges cast doubt on the court's finding, since the PCP need not be of the finest quality and the statute requires only a "detectable amount" of PCP in the "mixture or substance." 21 U.S.C. § 841(b)(1)(A)(iv). Moreover, other evidence besides Card's testimony about the PCP delivered by Bridges also demonstrates that the conspiracy involved large amounts of PCP.

Finally, Bridges seeks a new trial because the Government allegedly failed to turn over discoverable material in a timely fashion, and because after the turnover of the material, the district court failed to grant a recess to allow defense counsel to review the material. The discoverable material consisted of audiotapes of conversations between Card and a then-unindicted co-conspirator Brian Williams. Bridges points to the district court's observation that the tapes "are really discoverable and [the government] should have give them to [defendant] six months ago." However, because the tapes did not contain exculpatory material, they were not discoverable under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Nor did Fed. R.Crim.P. 16 grant Bridges the right to receive the tapes, since they were not "material to preparing the defense" and "the government [did not] intend[ ] to use the item in its case-in-chief at trial." Fed. R.Crim.P. 16(a)(1)(E).

The tapes were discoverable as "3500 material" under the Jencks Act, which requires the government to produce statements made by government witnesses "[a]fter a witness called by the United States has testified on direct examination." 18 U.S.C. § 3500(b); *see also* Fed. R.Crim.P. 26.2(a). However, since the defendant's right to Jencks Act material does not arise until after the witness's testimony, the Government's production of the tapes, which occurred prior to Card's testimony, was not untimely. Nor did the district court abuse its discretion in declining to grant a continuance. *See Grotto v. Herbert*, 316 F.3d 198, 206 (2d Cir.2003).

For the reasons stated above, we affirm the judgment of the district court.