20-3876-cr
*United States v. Jones*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of August, two thousand twenty-two.

PRESENT:
> DENNY CHIN,
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

     *Appellee*,

     v.                          20-3876-cr

ALEXANDER MELENDEZ, AKA Kiki, GYANCARLOS ESPINAL, AKA Fatboy, AKA Slime, ARIUS HOPKINS, AKA Scrappy, AKA Scrap,

     *Defendants*,

THERYN JONES, AKA Old Man Ty, AKA Tyballa,

     *Defendant-Appellant*.*

---

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

FOR APPELLEE:                              DANIELLE R. SASSOON, Assistant United
                                           States Attorney (Karl Metzner, Assistant
                                           United States Attorney, *on the brief*), *for*
                                           Damian Williams, United States Attorney
                                           for the Southern District of New York, New
                                           York, NY.

FOR DEFENDANT-APPELLANT:                   MARC L. GREENWALD (Andrew H.
                                           Schapiro, Daniel R. Koffmann, *on the brief*),
                                           Quinn Emanuel Urquhart & Sullivan, LLP,
                                           New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Theryn Jones appeals from a judgment of conviction, entered against him on November 9, 2020, on two counts in connection with the murder of Shaquille Malcolm. Jones and co-defendant Arius Hopkins were found guilty of (1) using a firearm to commit murder during a drug-trafficking offense, in violation of 18 U.S.C. § 924(j), and (2) murder in furtherance of a drug-trafficking conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A).   Jones was sentenced to life imprisonment.

On appeal, Jones argues that:   (1) the evidence was not sufficient to find him guilty of the crimes of conviction; (2) the district court abused its discretion in admitting evidence of Jones's membership in a gang and use of firearms; (3) the district court abused its discretion in declining to compel the government to grant immunity for a defense witness whose testimony could exculpate Jones, and in excluding that witness's out-of-court statements; (4) the district court's decision to shackle Jones during trial violated his due process rights; (5) the district court abused its discretion in curtailing Jones's summation; and (6) the district court abused its discretion in

2

declining to sever Jones's and Hopkins's trial. We assume the parties' familiarity with the underlying facts and procedural history of this case, to which we refer only as necessary to explain our decision to affirm.

## I. Sufficiency of the Evidence

Jones argues that the evidence was insufficient to support his conviction because the testimony of the government's key witness was not credible, and because the government failed to prove that the murder was committed in furtherance of a narcotics conspiracy, or that any such conspiracy involved 280 grams or more of crack cocaine.

We review a challenge to the sufficiency of the evidence *de novo*. *See United States v. Laurent*, 33 F.4th 63, 75 (2d Cir. 2022). However, a defendant who makes such a challenge "bears a heavy burden." *United States v. Connolly*, 24 F.4th 821, 832 (2d Cir. 2022). In reviewing whether a conviction is supported by sufficient evidence, "we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). We must affirm the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Silver*, 864 F.3d 102, 113 (2d Cir. 2017) (internal quotation marks omitted).

After reviewing the trial record, we find Jones's challenge to the sufficiency of the evidence on the two counts of conviction to be without merit. Drawing all permissible inferences in the government's favor, the evidence at trial established that Jones, a leader of the MacBallas gang who operated a crack cocaine business in the Bronx, commissioned Malcolm's murder because Malcolm began selling crack to Jones's customers within Jones's territory. Two cooperating

3

witnesses testified against Jones at trial and directly implicated Jones in the murder: Alexander Melendez, who, together with Hopkins, ambushed Malcolm on the day of the murder, and Jamal Costello, a member of the MacBallas gang to whom Jones made admissions about the murder.[1]

Melendez stated that he sold crack for Jones and, together with Hopkins, frequented Jones's "trap house"—*i.e.*, the apartment where Jones kept crack and guns. With respect to the murder, Melendez testified that he and Hopkins killed Malcolm pursuant to Jones's orders. According to Melendez, Jones wanted Malcolm murdered because Malcolm was stealing Jones's customers by selling crack next to Jones's trap house and at a cheaper price. Jones accompanied Melendez to obtain the guns to be used in the murder—a .22 caliber firearm for Melendez and a .40 caliber firearm for Hopkins. On the day of the murder, it was Jones who informed Melendez of Malcolm's location, so that Melendez and Hopkins could follow Malcolm back to his apartment building. Once Melendez and Hopkins snuck into Malcolm's building, it was Jones who called a drug customer to lure Malcolm downstairs for a sale, thus giving Melendez and Hopkins an opportunity to ambush Malcolm.

Costello testified that Jones was a high-ranking member of the MacBallas and ran a crack business in the Bronx. Costello corroborated Melendez's account as to Jones's involvement in the murder plot. Costello testified that, prior to Malcolm's murder, Jones complained that someone was stealing his drug customers and that Jones was going to "get him dealt with." App'x at 238.[2] Costello also stated that, sometime after the murder, Jones referred to Hopkins

---

[1] Melendez and Costello testified under cooperation and non-prosecution agreements, respectively.

[2] "App'x" refers to the appendix filed by Jones on appeal, and "Tr." refers to the full trial transcript filed on the district court's docket.

as the "youngin that handled the problem I had," which Costello understood to mean that Hopkins dealt with the rival crack dealer. Tr. 707–08. Taken together, Melendez's and Costello's testimony was more than sufficient for a rational jury to find that Jones participated in the murder and that it was committed in furtherance of a narcotics conspiracy. *See United States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012) ("[E]ven the testimony of a single accomplice witness is sufficient to sustain a conviction, provided it is not incredible on its face." (internal quotation marks omitted)).

Jones, however, argues that Melendez's testimony was not credible and could not lead a reasonable jury to convict Jones because Melendez admitted to lying in his first meeting with the government and made other inconsistent statements about Jones's participation in the murder. We are not persuaded. Despite these purported inconsistencies, there was nothing that rendered Melendez's testimony about Jones ordering Malcolm's murder to protect his drug operation incredible on its face—in fact, this account was corroborated by Costello and other evidence. Moreover, Melendez was subject to vigorous cross-examination, during which defense counsel questioned him regarding any alleged lies and inconsistencies, and the jury thus had a full opportunity to consider these issues in assessing Melendez's credibility and weighing his testimony in light of all of the evidence. In short, we discern no basis to disturb the jury's assessment of Melendez's credibility. *See United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) ("It is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." (internal quotation marks omitted)); *see also United States v. Baker*, 899 F.3d 123, 130 (2d Cir. 2018) ("We will not attempt to second-guess a jury's

5

credibility determination on a sufficiency challenge, particularly when, as is the case here, trial counsel already presented these same credibility arguments to the jury." (internal quotation marks omitted)).

Nor are we persuaded that the evidence was insufficient to support Jones's conviction because another individual, who was not a witness at trial, also wanted Malcolm dead and encouraged Melendez to carry out the murder. Jones relies on *United States v. Glenn*, 312 F.3d 58 (2d Cir. 2002), where we overturned a defendant's murder conviction because, while the defendant had a motive to commit the murder, the evidence gave "nearly equal circumstantial support to competing explanations for [the victim's] death," and "several other drug dealers had equal or substantially more motive to harm [the victim], were armed, had access to [the victim], and frequented the area where [the victim] was killed." *Id*. at 70 (internal quotation marks omitted). However, *Glenn* is distinguishable from this case. While the government's evidence in *Glenn* was "entirely circumstantial" and there was "no direct" testimony establishing the defendant's guilt, in this case, Melendez testified that Jones ordered him to murder Malcolm and helped to lure the victim out of his apartment to give Melendez and Hopkins an opportunity to commit the murder. *Cf. id.* at 60–61.

Finally, the government presented sufficient evidence to prove that Malcolm's murder had a nexus to a narcotics conspiracy involving 280 grams or more of crack cocaine. *See* 21 U.S.C. § 841(b)(1)(A)(iii). A drug quantity must be proven through "specific evidence of drug quantities, or evidence from which quantity can, through inference, be logically approximated or extrapolated." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019). Here, Melendez testified that he was at Jones's trap house almost every day and that the process that he observed

6

involved bagging 100 grams of crack cocaine at a time, while Costello testified that he witnessed Jones handing out 15 grams of crack twice a week to a single worker over the course of two years. Thus, that worker alone received approximately three kilograms of crack from Jones during the narcotics conspiracy—and, according to Costello, Jones supplied dozens of such workers. Based upon this testimony, and the reasonable inferences drawn from such testimony and other evidence, the jury could rationally find that the narcotics conspiracy involved 280 grams or more of crack cocaine.

In sum, the evidence at trial was sufficient to support Jones's conviction on both counts.

## II. Admission of Evidence of Gang Membership and Use of Firearms

Next, Jones argues that the district court erred in admitting evidence of Jones's membership in the MacBallas and his use of firearms. We disagree.

We review a district court's decision to admit or exclude evidence for abuse of discretion, and we will reverse such a ruling only when it is "manifestly erroneous" or "arbitrary and irrational." *See United States v. Dawkins*, 999 F.3d 767, 788 (2d Cir. 2021). Although evidence of "any other crime, wrong, or act" cannot be used to show a person's bad character, it is admissible to prove, among other things, motive, opportunity, intent, or knowledge. *See* Fed. R. Evid. 404(b)(1), (2). Thus, "such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (internal citation omitted).

Moreover, evidence of other crimes or acts can be admitted without reference to Rule 404(b) if that conduct "arose out of the same transaction or series of transactions as the charged

7

offense," "is inextricably intertwined with the evidence regarding the charged offense," or "is necessary to complete the story of the crime on trial." *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (internal quotation marks omitted); *see also United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (stating that evidence of other crimes is admissible to "demonstrat[e] the context of certain events relevant to the charged offense"). "When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *See United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994). Any evidence admitted for these additional purposes must likewise survive the Rule 403 weighing of its probative value against the danger of unfair prejudice. *See Robinson*, 702 F.3d at 37.

We find no abuse of discretion in the district court's decision to admit evidence of Jones's leadership in the MacBallas, including testimony that Jones was a high-ranking member of the gang who had directed other members to commit violence at his behest. The district court admitted such evidence to prove the existence of a narcotics conspiracy, to provide context for the criminal relationship between the co-conspirators, and to establish motive. The evidence of Jones's leadership within the MacBallas was probative of the existence of a narcotics conspiracy because many of the individuals selling drugs for Jones were other MacBallas members, and Jones's drug operation was thus inextricably intertwined with his gang membership. Indeed, certain acts of violence that Jones directed as a MacBallas leader were commissioned to protect his drug operation. Jones's authority within the gang, and his corresponding ability to influence other individuals to carry out violent acts, was also admissible because it explained why Melendez and Hopkins carried out the murder at Jones's direction. For example, the evidence that Hopkins joined the MacBallas under Jones right after Malcolm's murder showed how the relationship

8

between Hopkins and Jones developed and was probative of Hopkins's motive to participate in the murder.   *See United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.").

Nor did the district court err in admitting evidence of Jones's possession and use of firearms as probative of his involvement in a narcotics conspiracy.   *See United States v. Muniz*, 60 F.3d 65, 71 (2d Cir. 1995) (collecting "innumerable precedents of this court approving the admission of guns in narcotics cases as tools of the trade"); *United States v. Estrada*, 320 F.3d 173, 183 (2d Cir. 2003) (stating that use of firearms "to enforce [a defendant's] control over the drug market" can be considered overt acts in a narcotics conspiracy).   Here, Costello testified that he witnessed Jones providing firearms to others in order to commit violent acts to protect the drug operation. Thus, the evidence of Jones's use and possession of firearms provided important context and was highly probative of the existence and nature of Jones's drug operation.

Moreover, not only did the district court conduct the requisite balancing under Rule 403, the district court also minimized any potential prejudice arising from the admission of this evidence by screening prospective jurors for gang-related bias in *voir dire* during jury selection, and by giving a limiting instruction to the jury that any such evidence could not be used "as a substitute for proof that the defendant committed the crimes with which he is charged in this case," Tr. 1313, but could only be considered for limited purposes, such as "understand[ing] the relationships among the people involved in this case, the level of trust and confidence they placed in one another, and why they did so."   Tr. 694.

For these reasons, we conclude that the district court did not abuse its discretion in allowing

9

the government to introduce evidence relating to Jones's leadership in the MacBallas and his use of firearms.

### III.     Defense Witness Immunity and Out-of-Court Statements

Jones also challenges the district court's decision not to compel the government to grant immunity for a witness whose testimony could exculpate Jones, and to exclude that witness's out-of-court statements.    We find these challenges to be without merit.

We review for abuse of discretion a district court's decision not to compel the government to grant use immunity to a defense witness.    *See United States v. Ebbers*, 458 F.3d 110, 118 (2d Cir. 2006).    It is well established that "[t]he government is under no general obligation to grant use immunity to witnesses the defense designates as potentially helpful to its cause but who will invoke the Fifth Amendment if not immunized."    *Id.*    "Nevertheless, under extraordinary circumstances, due process may require that the government confer use immunity on a witness for the defendant."    *United States v. Stewart*, 907 F.3d 677, 685 (2d Cir. 2018) (internal quotation marks omitted).    To compel immunity, a defendant must show, first, "that the government has used immunity in a discriminatory way" or "has deliberately denied immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage through such manipulation." *Ebbers*, 458 F.3d at 119 (internal quotation marks omitted).    "Second, the defendant must show that the evidence to be given by an immunized witness will be material, exculpatory and not cumulative and is not obtainable from any other source."    *Id.* (internal quotation marks omitted). To do so, the defendant must show that "the non-immunized witness's testimony would materially alter the total mix of evidence before the jury."    *Id.*    However, "the situations in which

10

conferring immunity would be required are so few and exceptional that we have yet to reverse a failure to immunize." *Stewart*, 907 F.3d at 685 (internal quotation marks and alteration omitted).

After reviewing the record,[3] we find that the district court did not abuse its discretion in denying Jones's motion to compel immunity based upon the government's legitimate law enforcement concern that the witness at issue had not yet been sentenced for his own criminal conduct, as well as Jones's failure to demonstrate that the government was using immunity in a discriminatory manner or to gain a tactical advantage. There also was sufficient support in the record for the district court's determination that the witness's testimony, even if somewhat exculpatory, would not materially alter the total mix of evidence before the jury.

We find similarly unpersuasive the related challenge to the district court's decision to exclude that witness's out-of-court statements about Jones under Federal Rule of Evidence 804(b)(3). We review a district court's exclusion of evidence under Rule 804(b)(3) for abuse of discretion. *See United States v. Jackson*, 335 F.3d 170, 176 (2d Cir. 2003). Here, the district court was well within its discretion in concluding that the statements were not against the witness's self-interest and were untrustworthy, as the witness had reason to lie for Jones. *See United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) (out-of-court statements are not admissible under Rule 804(b)(3) unless they are against the declarant's penal interest and "there are corroborating circumstances indicating both the declarant's trustworthiness and the truth of the statement" (internal quotation marks omitted)); *United States v. Salvador*, 820 F.2d 558, 562 (2d Cir. 1987)

---

[3]  Because the witness's name and his statements about Jones are under seal, we do not discuss them here.

11

(statement to prosecutor was "not clearly trustworthy" where declarant knew the defendant and "may have had reason to lie for him").

Accordingly, the district court did not abuse its discretion in denying Jones's motion to compel immunity for a witness and excluded the witness's out-of-court statements.

## IV.    The Imposition of Physical Restraints During Trial

Jones also argues that the district court's decision to shackle his legs during trial violated his due process rights.    We find no basis to disturb the conviction on this ground.

Forcing a defendant to be tried in shackles may deprive him of due process absent a finding of necessity.    *See Davidson v. Riley*, 44 F.3d 1118, 1122 (2d Cir. 1995).    A district court may physically restrain a defendant during trial only if the restraints are "necessary to maintain safety or security" in the courtroom, and the district court takes steps "to minimize the prejudice resulting from the presence of the restraints."    *United States v. Haynes*, 729 F.3d 178, 189 (2d Cir. 2013) (internal quotation marks omitted).    "Any finding of necessity and all accommodations made to minimize the extent of the defendant's restraint during trial or to ensure that the jury does not become aware of any physical restraints on the defendant must be made on the record by the District Court."    *Id*. at 190.    "When the trial court has followed the proper procedures, its decision is reviewable for abuse of discretion."    *Hameed v. Mann*, 57 F.3d 217, 222 (2d Cir. 1995).

The district court followed the proper procedure and acted within its discretion in ordering Jones to wear concealed leg shackles during trial after considering Jones's disciplinary history, the severity of the sentence he faced, and the recommendation of the U.S. Marshals Service that Jones should be restrained.    The district court found that the restraints were necessary to ensure safety

12

in the courtroom, given that Jones had previously threatened and assaulted a corrections officer in retaliation for the officer's role in the arrest of Jones's girlfriend. As a result of the assault, the corrections officer suffered a concussion, abrasions, and injuries to the jaw and ankle, for which he needed surgery. The district court reasoned that Jones's retaliatory assault on the correction officer was "cause for concern for possible retaliation against witnesses in this case," in which Jones faced a possible life sentence for murder. App'x at 71. Furthermore, the U.S. Marshals Service recommended that Jones should be restrained during trial to ensure safety.

Under these facts, and having made specific findings on this issue, the district court did not abuse its discretion in concluding that, because Jones might pose a security risk during trial, he should be placed in leg shackles to protect the witnesses and others in the courtroom, and that "less restrictive means of ensuring safety [were] not available." *Id.* Additionally, the district court minimized any prejudice resulting from the presence of Jones's leg restraints by taking extensive precautions to prevent the jury from learning that Jones was shackled during the trial. For example, the district court considered how to conceal Jones's leg restraints from every "vantage point" in the courtroom. App'x at 76. The table, at which Jones sat at trial, was covered with black drapes on three sides—the side facing the jury box, the side facing away from the jury box, and the side facing the bench—to ensure that the jurors could not see Jones's legs when entering or exiting the courtroom. Moreover, the district court ordered that the same drapes be placed around Hopkins's table to prevent alerting the jurors that Jones was subject to special treatment. The district court also instructed the parties for both sides to remain seated when the court or the jury entered or exited the courtroom to minimize the visibility of the restraints and eliminate

13

sound.[4]

In sum, the district court's decision to shackle Jones during the trial did not violate his due process rights.

### V.      Jones's Summation Arguments

Jones also contends that the district court erred in (1) curtailing certain of his counsel's arguments during summation regarding the government's failure to produce phone records implicating Jones, and (2) then instructing the jury not to consider facts not in evidence.   We disagree.

"A district court has broad discretion in limiting the scope of summation, and a court's decision to limit the scope of summation will not be overturned absent an abuse of discretion." *See United States v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001) (internal citation omitted).   "There is no abuse of discretion if the defendant cannot show prejudice."   *Id.*

During his summation, counsel for Jones suggested that the government could not meet its burden of proof because it did not introduce phone records corroborating Melendez's testimony about Jones.   *See* App'x at 361 ("So I want to go through some of the ways in which the government could have, and I submit, in order to meet their burden of proof, needed to . . . convince you that these two cooperators were telling the truth."); *see also* App'x at 362 ("I submit to you that if you don't see phone records, you should ask yourself:   Has the government demonstrated

---

[4]   Furthermore, the district court accommodated defense counsel's request not to restrain Jones during *voir dire* because there was a greater risk for prospective jurors to notice the shackles on Jones's legs.   That accommodation during jury selection, contrary to counsel's argument on appeal, does not undermine the district court's discretionary determination that the physical restraints were nonetheless necessary for the remainder of the trial because, among other things, "the risk level is greater the longer the trial goes on," as "the prospect for an acquittal" and the "defendant's disposition to behave himself arguably diminishes." App'x at 83–84.

that these people are telling the truth?  And have they met their burden of proof?").  Defense counsel further argued to the jury that the government "presumably . . . would know what the victim's telephone numbers were" and invited speculation that "there should be phone records" implicating Jones.[5]  App'x at 362.

The district court properly exercised its discretion in sustaining the government's objection to Jones's argument and issuing a limiting instruction to the jury to address these impermissible arguments.  Although the "absence of evidence in a criminal case is a valid basis for reasonable doubt," a district court can properly sustain an objection to a factual assertion that has no basis in the record because such speculation "could confuse the jury by implicating facts about which the jury heard no testimony."  *Bautista*, 252 F.3d at 145.  Here, Jones was inviting the jury to speculate about the existence and content of phone records about which the jury heard no testimony.  Moreover, Jones's related argument that the government necessarily needed to produce phone records to meet its burden "amounted to an (improper) invitation for the jury to consider the government's choice of investigative techniques," and the district court did not abuse its discretion in sustaining the government's objection.  *See id.* (finding that the district court properly exercised its discretion in sustaining an objection to the defendant's arguments concerning the government's failure to corroborate the informants' testimony with phone records).

---

[5]  This line of argument was a continuation of similar suggestions in the opening statement by Jones's counsel that "it's not hard to get phone records" and that "I expect that we'll introduce phone records." Tr. 30.  Contrary to these promises, Jones never introduced any phone records or evidence about the government's ability to obtain such records.

15

To the extent that Jones contends that the district court's ruling and the language of its limiting instruction somehow curtailed Jones's ability to make legitimate arguments that a lack of evidence is a valid basis for reasonable doubt, we disagree. Counsel for Jones was permitted to argue extensively during his closing argument regarding the lack of evidence to corroborate the cooperating witnesses, including the lack of documents or other physical evidence. *See, e.g.*, Tr. 1192 ("Were there any documents about Ty Jones in this case? I submit there were not. Was there any physical evidence relating to evidence that Ty Jones had anything to do with this? I submit there was not. The kinds of evidence that don't have a bias, that don't have a motive, that have no need to lie, which is physical evidence, documents, not here.").

Accordingly, we discern no abuse of discretion in the district court's sustaining the objection during the summation and issuing a curative instruction.

## VI. Severance

Finally, Jones contends that the district court erred in declining to sever his trial from that of co-defendant Hopkins because there was a risk of spillover prejudice from certain evidence admitted against Hopkins. We find this challenge to be without merit.

It is generally appropriate for defendants who are indicted together and "charged with participating in the same criminal conspiracy" to have joint trials. *See United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). Nevertheless, a district court may "sever the defendants' trials" if a joinder would "prejudice a defendant," Fed. R. Crim. P. 14(a), and the prejudice is "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). We review a district court's denial of a severance motion for abuse of discretion and will reverse such a denial "only if a

16

defendant can show prejudice so severe that his conviction constituted a miscarriage of justice."
*United States v. Cacace*, 796 F.3d 176, 192 (2d Cir. 2015) (internal quotation marks omitted).
Thus, a defendant bears the "extremely difficult burden" of showing that the denial of his severance
motion "caused substantial prejudice." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998)
(internal quotation marks omitted).

Jones argues that the district court erred in denying his motion for severance because he
was prejudiced by the admission of a music video, in which Hopkins described committing the
murder. However, the district court acted within its discretion in declining to grant severance on
that basis because Jones failed to show that the music video would cause substantial prejudice.
Even assuming that the video generally provided corroboration for Melendez's testimony about
the murder, the video did not directly implicate Jones because it made no reference to Jones or his
role in the murder plot. Thus, the video falls far short of substantially prejudicial evidence that
"tends to prove directly, or even by strong implication, that the co-defendant[]" is also guilty.
*United States v. Figueroa*, 618 F.2d 934, 946 (2d Cir. 1980). Furthermore, the district court
minimized any potential prejudice to Jones that might arise from the video by directing the jury to
consider each defendant's guilt separately, and not to consider the music video when deciding
whether the government had met its burden of proof as to Jones.[6] *See Zafiro v. United States*,

---

[6] Moreover, although Jones also argues that he was prejudiced because of the disparity between the evidence presented at trial against him and the greater evidence presented against Hopkins, Jones was able to use any such disparity of proof to his advantage by highlighting the lack of physical evidence or documents implicating Jones (in contrast to Hopkins). In addition, Hopkins's testimony at trial exculpated Jones because Hopkins testified that he did not murder Malcolm and did not seek to join the MacBallas under Jones—rather, Hopkins testified that Melendez carried out the murder alone at another drug dealer's direction. Thus, if it had been credited, that testimony would have provided reasonable doubt as to Jones's involvement in the murder plot.

506 U.S. 534, 539 (1993) (stating that, even where "the risk of prejudice is high . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice").

Accordingly, because Jones failed to show that his joint trial with Hopkins caused him substantial prejudice, the district court acted within its discretion in denying Jones's motion for severance.

\*                    \*                    \*

We have considered all of Jones's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

18