UNITED STATES of America, Appellee,

v.

John J. McCARTHY, Defendant–Appellant.

No. 472, Docket 94–1072.

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1994.

Decided April 11, 1995.

---

Steven M. Statsinger, Legal Aid Soc., Federal Defender Div., Appeals Bureau, New York City, for defendant-appellant.

John H. Durham, Asst. U.S. Atty., for the D. of Conn., Counsel (Christopher F. Droney, U.S. Atty., D. of Conn.), for appellee.

Before: VAN GRAAFEILAND, WALKER, and CABRANES, Circuit Judges.

WALKER, Circuit Judge:

On January 28, 1994, following a jury trial in the United States District Court for the District of Connecticut (T.F. Gilroy Daly, *Judge* ), John J. McCarthy was convicted on two counts of possession of a weapon by a previously convicted felon in violation of 18 U.S.C. § 922(g). The district court sentenced him to a 235–month term of imprisonment under U.S.S.G. § 4B1.4 (1993), followed by five years of supervised release. In this appeal, McCarthy raises a number of challenges, both *pro se* and through counsel. Having examined all of McCarthy's *pro se* claims and found them to be without merit, we turn to the claims raised by counsel. Among those points are McCarthy's assertions that his sentence was inappropriate and that the trial below was unfair.

McCarthy attacks his sentence on two grounds: that U.S.S.G. § 4B1.4 is invalid because the Sentencing Commission lacked the statutory authority to promulgate the provision, and that even if the Commission had such authority, it exceeded its authority because the minimum sentence applicable under § 4B1.4, which enhances sentences for defendants considered armed career criminals pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), exceeds the statutory minimum under the ACCA.

■ To support his first claim, McCarthy argues that § 4B1.4 conflicts with the enabling statute for the Sentencing Commission, 28 U.S.C. §§ 991–98. Congress, he contends, authorized the Commission to establish "categories of offenses." *See* 28 U.S.C. §§ 994(b), (c). It did not, however, expressly authorize the Commission to establish guidelines for the ACCA, he continues, because the ACCA is a sentence enhance-

ment statute and does not create a substantive offense. Consequently, McCarthy concludes, U.S.S.G. § 4B1.4 is unauthorized.

McCarthy's reading of the enabling statute is incomplete. The statute states elsewhere that:

The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for *categories of defendants* in which the defendant—

(1) has a history of two or more prior Federal, State, or local felony convictions for offenses committed on different occasions.

28 U.S.C. § 994(i) (emphasis added); *see also* 18 U.S.C. § 3553(a)(1) (including among the factors "to be considered in imposing a sentence ... the history and characteristics of the defendant."). In addition, the enabling statute requires the Commission to consider whether the defendant's criminal history, among other factors, has any relevance to the appropriate sentence. 28 U.S.C. § 994(d)(10). Thus, putting aside the question whether the ACCA creates a substantive offense, it is plain that repeat felony offenders who would qualify for sentencing under the ACCA constitute a category of defendants.

Finally, U.S.S.G. § 4B1.4 is consistent with Congress's intent to have the guidelines provide "a comprehensive and consistent statement of the Federal law of sentencing" that would "structure judicial sentencing discretion [and] eliminate indeterminate sentencing." S.Rep. No. 225, 98th Cong., 1st Sess. 39, *reprinted in* 1984 U.S.C.C.A.N. 3182, ·3222, 3248. Prior to the promulgation of § 4B1.4, sentencing courts were faced "with the difficult task of integrating two fundamentally different sentencing paradigms—a mandatory statutory minimum and the guidelines." *United States v. Tisdale*, 7 F.3d 957, 963 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1201, 127 L.Ed.2d 549 (1994). Section 4B1.4 was designed to offer a more consistent approach to sentencing armed career criminals.

In light of the foregoing, McCarthy's assertion that the Commission lacked authority

to promulgate § 4B1.4 because the enabling statute does not specifically refer to "a defendant's eligibility for a statutory sentence enhancement under the A.C.C.A." rings hollow. In authorizing the Commission to issue guidelines "consistent with all pertinent provisions of title 18," Congress surely was not required to specify each and every applicable provision within the title. Consequently, we easily hold that the Commission acted within its authority in promulgating § 4B1.4.

■ McCarthy next contends that even if the Commission had such authority, it exceeded that authority because § 4B1.4 imposes a minimum sentence that is greater than the minimum sentence set by the ACCA. The ACCA provides a mandatory minimum sentence of 15 years, or 180 months, for defendants convicted of violating 18 U.S.C. § 922(g) who have three previous felony convictions for a violent felony or serious drug offense. 18 U.S.C. § 924(e)(1). McCarthy claims that, under U.S.S.G. § 4B1.4, the minimum specified offense level is 33, § 4B1.4(b)(3)(B), and the minimum criminal history is Category IV, § 4B1.4, Commentary, Background, which results in a sentencing range of 188–235 months, U.S.S.G. Ch. 5, Pt. A. Therefore, he contends, the minimum sentence under the guidelines exceeds the statutory minimum by 8 months.

The minimum sentence under § 4B1.4, however, is not 188 months. McCarthy overlooks the downward adjustment specified in the guideline: namely, he ignores the explicit requirement that if the defendant is entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the district court must "decrease the offense level by the number of levels corresponding to that adjustment." § 4B1.4(b)(3)(B). Since an adjustment under § 3E1.1 may result in as much as a three-level reduction, the defendant's offense level could ultimately reach 30, resulting in a sentencing range of 135–168 months. U.S.S.G. Ch. 5, Pt. A. Thus, while the minimum possible sentence without an adjustment for acceptance of responsibility is 188 months—8 months greater than the statutory minimum—the application of such an adjustment, if there were no statutory mini-

mum, could result in a sentence, under § 4B1.4(b)(3), as low as 135 months. Therefore, as mandated by the enabling statute, and contrary to McCarthy's argument, the guideline range is entirely consistent with the ACCA's statutory range, as required by 28 U.S.C. § 994(b)(1) (The Commission must "establish a sentencing range *consistent* with all pertinent provisions of title 18.") (emphasis added).

Moreover, § 4B1.4 does not conflict with U.S.C. § 924(e)(1) because a sentencing judge has discretion to adjust the sentence downward to the statutory minimum, *see* U.S.S.G. Ch. 5, Pt. K, or even below the statutory minimum in the event of a § 5K1.1 departure for cooperation. We therefore hold that the Sentencing Commission did not exceed its authority and that McCarthy was properly sentenced under § 4B1.4.

■ We now turn briefly to McCarthy's remaining claims. First, he contends that the district court erred in denying his motion, pursuant to Federal Rule of Criminal Procedure 33, seeking a new trial on the basis of newly discovered evidence. This evidence was an interim psychiatric report, which the defense obtained a few days after the jury verdict.

Questions regarding McCarthy's competency first arose when, prior to the impaneling of the jury, he filed a motion to waive counsel and proceed *pro se*. Before ruling on this motion, the court ordered a competency examination of McCarthy. During the competency hearing, the physician who examined McCarthy expressed concern that McCarthy was not competent to assist in his own defense. It was later revealed that during the brief examination of just over an hour, the physician had misunderstood certain facts that may have distorted his impression: namely, he was not fully or properly apprised of the nature of McCarthy's employment by federal agents as a confidential informant. In addition, the physician apparently had not been informed that a clinical team of psychologists and social workers appointed by the Connecticut Superior Court had concluded that McCarthy was competent to stand trial on related state charges.

Consequently, the court directed a full psychiatric evaluation by a qualified medical staff, which ultimately involved nearly four months of observation and evaluation. The final report concluded that McCarthy was competent to stand trial. Following a second competency hearing, the court found the defendant competent to proceed to trial based on the clinical evaluation's final report. Finally, pursuant to *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the court granted McCarthy's motion to proceed *pro se.*

McCarthy now argues that the newly discovered interim report constitutes new evidence warranting a new trial. The interim report found that the defendant had a "delusional disorder" and that he exhibited "persecutory themes" and an "admixture of denial and grandiosity."

■■■ Rule 33 of the Federal Rules of Criminal Procedure only authorizes a district court to grant a new trial "if required in the interest of justice." Unless "the evidence is material, noncumulative, and 'would probably lead to an acquittal,'" the court will not grant a new trial. *United States v. Locascio,* 6 F.3d 924, 949 (2d Cir.1993) (citation omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1646, 128 L.Ed.2d 365 (1994). Here, where the newly discovered evidence pertains not to the defendant's guilt, but to his competency to stand trial, we examine whether the new evidence indicates that the defendant did not have "sufficient ... ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960) (per curiam). "We will not disturb the district court's findings of fact in these matters unless clearly erroneous, and we will not overturn the district court's decision except for an abuse of discretion." *Locascio,* 6 F.3d at 949.

The materiality of the interim report is highly suspect since it appears to be based on incomplete factual predicates. The report states that the diagnoses were "formulated with the supposition that [McCarthy had] not been employed in any governmental role. If

he [had], it would [have changed] the nature of these diagnostic formulations since that would raise reality factors and put a different perspective on matters." In fact, governmental authorities had used McCarthy in an undercover capacity, although McCarthy had had no contact with the agents for about a month before being arrested in July, 1992.

In any event, we need not determine whether the evidence was "newly discovered" in this instance because it provides no basis for a retrial. In light of its qualifications, the interim report taken as a whole does nothing to disparage the final report or the district court's determination of McCarthy's competency based on the final report. Moreover, while not all of the signatories of both reports were identical, Dr. Ruth Westrick, Chief of Psychiatry Services, did sign both reports. Thus, we have no reason to believe, and the defendant proffers none, that the interim report was not considered in the drafting and conclusions of the final report. Finally, the very fact that the report was interim gives it far less weight than the final report. Thus, we do not find that the district court abused its discretion in denying the motion for a new trial.

■■■ McCarthy also argues that he is entitled to a new trial on the basis of prosecutorial misconduct. Specifically, McCarthy points to prosecutors' questions relating to his familiarity with the legal process and his filing of lawsuits, which he claims were "attempts by the prosecutor to tarnish [his] testimonial credibility" and "was an improper line of questioning." When prosecutorial misconduct is alleged, a new trial is only warranted if the misconduct is "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Blissett v. LeFevre,* 924 F.2d 434, 440 (2d Cir.) (quotation marks and citations omitted), *cert. denied,* 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991). "The severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." *Id.*

In this case, we find no evidence that the prosecutor's questions amounted to miscon-

duct, much less misconduct of such severity as to warrant a reversal. When the district court sustained objections to the questions, the prosecution ended its examination. Moreover, the district judge cautioned the jury in one instance that the questions asked by counsel are not evidence, unlike the testimony of witnesses. Thus, even if the questions were improper, the district court cured any potential bias posed by the questions. Viewing the conduct at issue in the context of the overall proceedings, including the judge's curative measures, we therefore find that McCarthy was not deprived of a fair trial.

For all of the foregoing reasons, we affirm the district court's judgment and imposition of sentence.