UNITED STATES of America, Plaintiff,

v.

Yamil H. KOURI–PEREZ (01); Jeannette Sotomayor–Vazquez (02); Angel L. Corcino–Mauras (03); Julio R. Corcino–Mauras (04); Juan E. Rizek–Nassar (05); Rafael A. Rizek–Nassar (06); Milagros Garcia–Leon (07); Armando Borel–Barreiro (08), Defendants.

No. Crim. 97–091(JAF).

United States District Court, D. Puerto Rico.

Dec. 19, 1997.

Maria A. Dominguez, Asst. U.S. Atty, Guillermo Gil, U.S. Atty., San Juan, PR, for U.S.

Benny Frankie Cerezo, San Juan, PR, for Kouri–Perez.

Francisco Rebollo–Casalduc, San Juan, PR, for Sotomayor–Vasquez.

Juan A. Pedrosa, San Juan, PR, for Angel Corcino–Mauras.

Jorge Arroyo–Alejandro, San Juan, PR, for Julio Corcino–Mauras.

Roberto Buso–Aboy, San Juan, PR, for Juan Rizek–Nassar.

Miriam Ramos–Grateroles, San Juan, PR, for Garcia–Leon.

Harry Anduze–Montano, San Juan, PR, for Rafael Rizek–Nassar.

Yolanda Collazo, San Juan, PR, for Borel–Barreiro.

## OPINION AND ORDER

FUSTE, District Judge.

Codefendant Yamil Kourí–Pérez moves for disqualification of Assistant United States Attorney María Dominguez and her assistant, based on alleged improprieties during the pretrial phase of this case.

█ A district court may disqualify an attorney to prevent a lawyer's presence from tainting a trial, for perceived conflict of interest, to protect the integrity of the judicial process, to enforce its rules against transgressors, or to maintain public confidence in the legal profession. *In re Bushkin Associates, Inc.*, 864 F.2d 241, 246 (1st Cir.1989). "Because the district judge is on the front lines, with the smoke of battle pungent in his nostrils, he must be given considerable latitude in matching a condign sanction to counsel's breach of obligation." *Id.* However, the power to disqualify an attorney should be

engaged in the rare instance where other sanctions may not achieve the necessary effect. In short, disqualification should be "a measure of last resort." *In re Grand Jury Proceedings,* 859 F.2d 1021, 1026 (1st Cir. 1988).

The basis for the motion is a conversation between Mr. Luis Raúl Ríos, who works for the Comptroller's Office that discovered the alleged corruption, and Mr. Jaime Marcial–Falcón, assistant to Mr. Cerezo, attorney for codefendant Kourí–Pérez. The two law school colleagues were conversing following their bar examination. Mr. Marcial–Falcón, through no prodding, revealed to Mr. Ríos that codefendant Kourí–Pérez had arranged for some payment of other defendants' legal expenses. *Docket Document No. 83, (sealed).* In a status conference on September 15, 1997, the court revealed this information to all counsel, with the explicit admonition that it not be raised again. This admonition was made not because the court finds the matter distasteful or for some other frivolity, but rather because the court deemed the leak of this information of no consequence to this case. At that time, our informed analysis led us to believe no further discussion was necessary. Codefendant's motion presents no new argument to demonstrate otherwise.

■ Codefendant asserts that Ms. Domínguez' and Mr. Ríos' actions divided the defense camp because of the belief that there was an informant amongst them. Second, the defense characterizes the transfer of the information as an intentional ploy to divide the defense camp. One of codefendant's sentences summarizes codefendant's perspective: "[Mr. Ríos] targeted attorney Benny Frankie Cerezo as attorney for Dr. Kourí and set out to infiltrate himself by befriending an associate of the law firm with sole purpose of bringing back information to AUSA Domínguez."

This assertion involves a series of fantastic, counterfactual presumptions. First, the conversation that occurred was initiated not by Mr. Ríos, but by Mr. Marcial–Falcón. Second, Mr. Marcial–Falcón indicated in the conversation that he knew of Mr. Ríos' involvement in the prosecutorial camp before revealing the relevant information regarding the funding of the defense. These two facts preclude the existence of any veracity in codefendant Kourí–Pérez' assertion. The verb 'target' hardly describes the passive act of accepting an offer of conversation with a contemporary. One cannot plausibly confuse the moral agency in hearing a leak with that of infiltration. The only transgression that appears to have taken place in this conversation is the sharing of privileged defense information to a known member of the opposing team. Given the professional inexperience of these two individuals, the only credible explanation for this transgression is a lack of a nuanced sense of professional ethical obligations. Rather than viewing any malice in that conversation, we find it far more plausible that "loose lips" revealed apparently sensitive defense information. In short, codefendant Kourí–Pérez' motion builds on the quicksands of distortion to present a portrait of deviousness that recalls a John Grisham novel, rather than the facts of this case.

Mr. Cerezo revealed in the September 15, 1997, Status Conference that Mr. Marcial–Falcón was no longer in his employ. Although we do not know whether the leak caused his departure, a change in Mr. Marcial–Falcón's employment by the defense appears to have been the only reasonable remedy for the defense in this case. This court cannot envision, even on the horizon of most remote remedies, the disqualification of Ms. Domínguez and Mr. Ríos. Mr. Ríos' conversing with Mr. Marcial–Falcón implies at the very worst a minor indiscretion, against which disqualification would be wildly disproportionate. Ms. Domínguez' use of this information before the court may have promoted a minor fissure in the defense camp, but her behavior falls well within the permissible and ethical behavior of an attorney, even that of the high standards of one representing the United States. Assistant U.S. Attorney Domínguez found it prudent to report the incident to the court, and we find that she rightly did so.

Codefendant's motion fails to detail the causal relationship between her presentation to the court of this information and actual

problems in the defense camp. Such a fissure, if it indeed exists, may stem from problems within the defense camp itself. The knowledge among third parties of the possibility that codefendant Kourí–Pérez might be funding others' defenses may have caused some discord. It is no secret that myriad problems may arise related to the funding and the shared knowledge of it. Although this court previously considered the potential conflicts arising from such a funding arrangement, we had decided that at the time of our initial involvement, no conflicts were then apparent. *Docket Document No. 101.*

However, from our perspective, the defense camp appears to be functioning quite capably, giving lie to codefendant's representation of Ms. Dominguez' hobbling the defense. In short, no element of this situation could possibly give rise to a valid disqualification of Ms. Domínguez or her assistant. *See In re Grand Jury Proceedings,* 859 F.2d 1021, 1026 (1st Cir.1988).

Finally, we note that the government complained in its response that it had not received a copy of the defendant's motion for disqualification. Prompt service on opposing counsel is the most basic legal and ethical requirement, and is especially important in the context of a motion for disqualification. Given that this is not the first allegation of failed service, it is essential that the parties be particularly vigilant to meet their burden of providing service on all parties. Especially if service should fail initially for reasons outside their control, parties should make all efforts to ensure receipt. *See Gierbolini Rosa v. Banco Popular De Puerto Rico,* 171 F.R.D. 16 (D.P.R.1997).

In conclusion, we **DENY** codefendant Kourí–Pérez' motion for disqualification. This Opinion and Order disposes of *Docket Documents Nos. 168 and 178.*

**IT IS SO ORDERED.**