**UNITED STATES of America,**
**Appellee,**

v.

**Salvatore SCALA, Defendant–**
**Appellant.**

**No. 07–2544–cr.**

United States Court of Appeals,
Second Circuit.

Feb. 22, 2008.

Linda Urso, Stamford, CT, for Defendant–Appellant.

Elie Honig, Assistant United States Attorney (Eric Snyder, Telemachus P. Kasulis, Jonathan S. Kolodner, on the brief), for Michael Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: Hon. JON O. NEWMAN, Hon. RALPH K. WINTER and Hon. SONIA SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Defendant-appellant Salvatore Scala ("Scala") appeals from a judgment of conviction entered on April 9, 2007, in the United States District Court for the Southern District of New York (Kaplan, J.). We assume the parties' familiarity with the facts and procedural history of the case.

■ Scala raises a number of challenges to the judgment of conviction, all of which we reject. First, he claims that the district court abused its discretion in admitting testimony from Steven Aslan regarding out-of-court statements made to him by John Vargo regarding the reason to make extortionate payments to Scala. In particular, Scala challenges the admission of Vargo's statement that "[Scala] wants money to keep the peace." Scala claims that even if the testimony was offered as non-hearsay evidence as to Aslan's state of mind, the statement is "functionally indistinguishable from hearsay" under this Court's holding in *United States v. Reyes,* 18 F.3d 65, 69 (2d Cir.1994), because of the danger that the jury treated the statement as evidence of the truth of the matter asserted.

■ Although Aslan did not personally deliver money to Scala, Aslan's state of mind was relevant to the extortion charges against Scala. Aslan controlled the outflow of money from the VIP Club, and the at-issue evidence helps explain why Aslan provided the money—namely, out of fear, rather than because Scala was legally entitled to the money. *See* 18 U.S.C. § 1951(b)(2) (defining "extortion" as "the obtaining of property from another, with his consent, induced by . . . fear"). Moreover, the district court instructed the jury that Aslan's testimony about Vargo's statement was not being offered for the truth of Vargo's statement. We have no reason to believe that the jury was unable to, or did not, abide by that instruction. *See Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ("[J]uries are presumed to follow their instructions . . . ."); *accord United States v. Snype,* 441

F.3d 119, 130 (2d Cir.2006). Thus, the concerns we expressed in Reyes are inapt here. In any event, any abuse of discretion by the district court in admitting Vargo's statements was harmless in light of the strength of the unchallenged direct and circumstantial evidence on the extortion charges, including that: (1) Scala and co-defendant Thomas Sassano were well-known and widely-feared members of the Gambino Crime Family; (2) Scala had Vargo, as well as Vargo's predecessor as manager of the VIP Club, physically beaten over the non-payment of money; (3) Sassano, Scala's proxy, told Aslan that he would not be hurt as long he "cooperated with them"; (4) Sassano aggressively confronted Alan Kapson when Kapson stopped making the payments; (5) Scala and Sassano instituted a surreptitious method of cash collection after Scala's arrest in 2001; and (6) after the VIP Club was sold for $1.3 million, neither Scala nor Sassano received any of the sale proceeds, and neither defendant asserted any purported right to those proceeds in a lawsuit, thus undermining Scala's claim that he was a silent partner entitled to share in the club's revenues.

▮ Second, Scala claims that the government engaged in prosecutorial misconduct rising to the level of a due process violation by asking Scala's former attorney, Bruce Barket, questions on cross-examination about Scala's former conviction for extortion of an adult-video store. Reversing a conviction for prosecutorial misconduct is a "drastic remedy." *United States v. Valentine*, 820 F.2d 565, 570 (2d Cir.1987). "[I]n order to determine whether relief is warranted, prosecutorial misconduct must be assessed 'in the context of the entire trial'...." *Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir.2003) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). "The severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." *Blissett v. LeFevre*, 924 F.2d 434, 440 (2d Cir.1991).

Our concerns with the government's conduct notwithstanding,[1] we uphold the district court's denial of Scala's motions for a mistrial. The district court immediately struck the references to Scala's extortion conviction from the record, and at the close of the case instructed the jury that it was not permitted to draw any inference of guilt based on Scala's prior conviction. These measures sufficiently cured any prejudice that otherwise might have resulted from the government's imprudent line of questioning. *See United States v. McCarthy*, 54 F.3d 51, 55–56 (2d Cir.1995) (defendant not deprived of fair trial where court cured potential bias posed by improper questions and when conduct viewed in context of all proceedings); *accord United States v. Burns*, 104 F.3d 529, 538 (2d Cir.1997); *United States v. Oshatz*, 912 F.2d 534, 541 (2d Cir.1990). Moreover, in light of the isolated nature of the government's statements at issue, *see United States v. Parkes*, 497 F.3d 220, 234 (2d Cir.2007), and given the strength of the evidence against Scala as a whole, reversal of the conviction is not warranted under

1. The matter of Scala's prior conviction was discussed with the court before trial, at which time the government represented that it would not disclose the nature of the conviction to the jury except under certain circumstances. While the circumstances that unfolded at trial arguably may have justified the government's line of questioning, the government should have—at a minimum—obtained the court's permission to mention the nature of Scala's prior conviction, i.e., extortion of a sex-video shop, before making reference to it before the jury.

the circumstances. *See McCarthy,* 54 F.3d at 55–56.

■ Third, Scala claims that the district court abused its discretion by denying his motion to quash the subpoena served on his then-counsel, Bruce Barket. Scala asserts that the timing of the subpoena—shortly before trial—was unreasonable. *See In re Irving,* 600 F.2d 1027, 1034 (2d Cir.1979) (citing *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). However, the government offered a reasonable explanation for the delay, and the district court did not abuse its discretion in accepting the explanation. Moreover, while Scala maintains that the subpoena was an improper fishing expedition for information from Barket, *see id.* at 1034, the information sought was specific and relevant to the issue of Scala's income on the tax charges, and as corroborative evidence that the extortionate payments to Scala increased to help cover his legal fees. Accordingly, we affirm the district court's denial of the motion to quash.

■ Fourth, Scala claims that the district court erred in disqualifying Barket, who had invoked the Fifth Amendment privilege against self-incrimination in defense to producing the documents requested in the subpoena. Although there is a "presumption in favor of [the accused's] counsel of choice," the "presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat v. United States,* 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

Here, the district court did not err in finding that an actual or potential conflict existed. Barket, by invoking his Fifth Amendment right against self-incrimination, was apparently concerned about his own misconduct (or perceived misconduct) relating to Scala's case. As the district court found, Barket's judgment could therefore have been affected. For example, Barket might have been less inclined to encourage Scala to cooperate because Scala might have implicated Barket in criminal activity. Likewise, Barket's advice about pre-trial decisions, such as plea discussions, also could have been affected. *See United States v. Fulton,* 5 F.3d 605, 613 (2d Cir.1993). Similarly, Barket's trial decisions could well have been affected because Barket may have sought to avoid examinations of witnesses who might have exposed him to whatever conduct he was concerned about in asserting the Fifth Amendment. Of course, it was then, and is still now, impossible to confidently predict how these matters might have unfolded. To avoid the problems anticipated above, and perhaps others unforeseen, the district court acted within its broad discretion in disqualifying Barket and declining Scala's request for a waiver of conflict. *Wheat,* 486 U.S. at 162–63, 108 S.Ct. 1692 (explaining that because "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict ... the district court must be allowed substantial latitude in refusing waivers of conflicts not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses"); *see also United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993). Thus, we affirm the district court's disqualification of Barket.

■ Fifth, Scala claims that the district court erred in denying his request to recall Alan Kapson to the witness stand to answer questions concerning certain financial documents that Scala claims were improperly withheld by the government prior to Kapson's initial testimony during its case-in-chief. The district court acted within its discretion in denying Scala's request to

recall Kapson because Scala did not explain—and still has not explained—how the documents were favorable to the defense, either as exculpatory or impeachment material. Scala's revelation that "Kapson personally withdrew over $200,000.00 during his several month tenure watching over the VIP Club" is entirely consistent with Kapson's testimony that he was retained to review the VIP Club's finances and to distribute receipts from the VIP Club to the estate of the club's former owner. Moreover, while Scala complains that his counsel was not aware of the financial documents at issue until after Kapson's testimony, the documents were made available for Scala's review at least six months before trial; his prior counsel simply failed to review the documents at that time. Accordingly, we affirm the district court's denial of Scala's request to recall Kapson as a witness.

Finally, Scala claims that his conviction on the tax charges should be vacated on the ground of prejudicial spillover from his extortion-related convictions. *See United States v. Rooney,* 37 F.3d 847, 855–56 (2d Cir.1994) (discussing standards for the spillover doctrine). Because we affirm the extortion conviction, however, Scala's spillover claim is moot.

For the foregoing reasons, the judgment of the district court is AFFIRMED.