BESOSA, District Judge.
*186 Before the Court is the United States' motion for an inquiry regarding potential conflicts of interests arising from the source of defendant José Mulero-Vargas ("Mulero")'s attorneys' fees. (Docket No. 142.) The Court referred the United States' motion to Magistrate Judge Marshal D. Morgan. (Docket No. 143.) The magistrate judge issued a report and recommendation ("R & R"), recommending that the Court disqualify attorneys Jedrick Burgos-Amador ("Burgos") and Ricardo Lozada-Franco ("Lozada"). (Docket No. 190.) For the reasons set forth below, the Court ADOPTS the R & R. Id. Burgos and Lozada are DISQUALIFIED from representing Mulero in this criminal action.
I. Background[1]
Puerto Rico Police Department ("PRPD") officers executed a search warrant at Mulero's one-bedroom apartment on May 3, 2017. (Docket No. 1, Ex. 1 at p. 1.) Among the items the PRPD officers seized during the execution of the search warrant were seven firearms, over 1000 rounds of ammunition, 154 prescription pills, 266 baggies containing cocaine, six digital scales, a drug ledger, and $ 612 in United States currency. Id. Subsequently, the PRPD officers arrested the two occupants of the apartment, Mulero and Luis Merced-García ("Merced") (collectively "defendants"). Id. at p. 3.[2]
On May 10, 2017, a grand jury charged the defendants with possession of a machinegun in furtherance of a drug trafficking crime, possession of a firearm in furtherance of a drug trafficking crime, and possession with intent to distribute a detectable amount of cocaine, in violation of 18 U.S.C. § 924(c)(1)(B)(ii), 18 U.S.C. § 924(c)(1)(A)(i), and 21 U.S.C. § 841(a)(1), respectively. (Docket No. 16.) Mulero completed a CJA 23 Financial Affidavit, setting forth his income, assets, obligations and debts at the time of his arrest. (Docket No. 3.)[3] Magistrate Judge Bruce J. McGiverin "deemed it appropriate to appoint counsel." (Docket No. 5.)
Assistant Federal Public Defender Francisco Celedonio ("Celedonio") appeared on Mulero's behalf on May 9, 2017. (Docket No. 10.) The following day, however, Mariela Maestre-Cordero ("Maestre") filed a notice of appearance on Mulero's behalf. (Docket No. 11.) The appearance of privately retained counsel prompted Celedonio to withdraw from this litigation. (Docket No. 12.)
Maestre represented Mulero for less than two months, appearing at the initial detention and de novo bail hearings.
*187 (Docket Nos. 12 and 32.)[4] Javier Cuyar-Olivo ("Cuyar") filed a notice of appearance on June 28, 2017. Maestre subsequently moved to withdraw, and the Court granted her motion. (Docket Nos. 53 and 54.)
On July 21, 2017, the defendants filed a joint motion to suppress evidence pursuant to the Fourth Amendment. (Docket No. 65.) The Court referred the defendants' joint motion to Magistrate Judge Camille L. Vélez-Rive. (Docket No. 57.) Cuyar, Burgos, and Lozada - all defense counsel in private practice - attended the suppression hearing.[5] (Docket Nos. 123 and 124.) Burgos and Lozada filed notices of appearance on July 2, 2018. (Docket Nos. 125 and 126.) After Cuyar accepted a position at the office of the Federal Public Defender for the District of Puerto Rico, he moved to withdraw on July 4, 2018. (Docket Nos. 127, 128.) The Court granted Cuyar's motion. (Docket No. 128.) Mulero is now represented by Burgos and Lozada.
On September 5, 2018, the United States moved for an inquiry to determine "where the money for multiple private attorneys [came] from." (Docket No. 142 at p. 5.) The Court referred the United States' motion to Magistrate Judge Marshal J. Morgan. (Docket No. 143.) The magistrate judge recommends that the Court disqualify Burgos and Lozada, appoint counsel from the CJA Panel to represent Mulero, and order Burgos and Lozada to return the fees they received to represent Mulero. (Docket Nos. 158 and 190.) The Puerto Rico Association of Criminal Defense Lawyers ("PRACDL") submitted an amicus curiae brief in opposition to the United States' motion. (Docket No. 164.) Mulero objected to the R & R, the United States responded, and Mulero replied. (Docket Nos. 197, 200 and 202.)
II. Legal Standard
A district court may refer a pending motion to a magistrate judge for a R & R. See 28 U.S.C. § 636(b)(1)(B) ; Fed. R. Civ. P. 72(a) ; Loc. Rule 72(b). Any party adversely affected by the R & R may file written objections within fourteen days of being served with the magistrate judge's report. Loc. Rule 72(d). See 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a de novo determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." Ramos-Echevarría v. Pichis, Inc., 698 F.Supp.2d 262, 264 (D.P.R. 2010) (Domínguez, J.). Failure to comply with this rule precludes further review. See Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (a)(b)(1) ; Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985) ; Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003) (Domínguez, J.). Furthermore, the Court may accept those parts of the R & R to which the parties do not object. See Hernández-Mejías v. General Elec., 428 F.Supp.2d 4, 6 (D.P.R. 2005) (Fusté, J.)
III. The Sixth Amendment Right to Assistance of Counsel
The Sixth Amendment of the United States Constitution provides that in *188 all criminal prosecutions "the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Two correlative rights emanate from the Sixth Amendment: (1) the right to retain counsel of one's choice, and (2) the right to "representation that is free from conflicts of interest." See Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); Yeboah-Sefah v. Ficco, 556 F.3d 53, 68 (1st Cir. 2009) (quoting Wood v. Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) ). The essential aim of the Sixth Amendment, however, "is to guarantee an effective advocate for each criminal defendant, rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).
Mulero enjoys a presumption in favor of his choice of counsel. See Wheat, 486 U.S. at 159-60, 108 S.Ct. 1692. This presumption, however, "may be overcome not only by a demonstration of actual conflict, but by a showing of serious potential for conflict." Wheat, 486 U.S. at 164, 108 S.Ct. 1692 ; see Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir. 1976) ("The right to retain counsel of one's choice is not absolute.").[6] Mulero's choice of counsel must comport with "the public's interest in the prompt, fair and ethical administration of justice." United States v. Panzardi-Álvarez, 816 F.2d 813, 817. The Court possesses "wide latitude in balancing the right to counsel of choice against the needs of fairness." United States v. González-López, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (citing Wheat, 486 U.S. at 163-64, 108 S.Ct. 1692 ). The conflict of interest analysis is "left primarily to the informed judgment of the trial court." United States v. Santiago-Lugo, 167 F.3d 81, 84 (1st Cir. 1999) ; United States v. Laureano-Pérez, 797 F.3d 45, 52 (1st Cir. 2015.)
A. The Conflict of Interest Inquiry
The magistrate judge convened an evidentiary hearing "to determine if a third party [paid] the fees of the defendant's retained counsel and whether a conflict of interest exist[ed] in such a third-party fee arrangement." (Docket No. 158; Docket No. 181 at pp. 8-9.) Before the hearing, however, Burgos and Lozada moved to strike the United States' motion for an inquiry. (Docket No. 146.) Mulero's attorneys portrayed the inquiry as an unsubstantiated "fishing expedition ... to find out the identity of the purported payer of attorney's fees." (Docket No. 146 at p. 5.) The magistrate judge denied Burgos and Lozada's motion to strike, holding that the "hearing was consistent with well-established precedent from the U.S. Supreme Court." (Docket No. 148; Docket No. 190 at p. 21.) The Court agrees.
In Wheat v. United States, the Supreme Court held that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."
*189 Wheat, 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ; Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (recognizing "the ability of trial courts to make an early inquiry in certain situations likely to give rise to conflicts"); Mountjoy v. Warden, 245 F.3d 31, 38 (1st Cir. 2001) (holding that trial courts have a duty to inquire into possible conflicts of interest "not only when defendants object to a possible conflict, but also when trial judges are or should be independently aware of a possible conflict") (citing Wood v. Georgia, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) ).
In Wood v. Georgia, the Supreme Court addressed whether the third-party payment of attorneys' fees resulted in a conflict of interest. 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220. Wood involved employees of an adult theater who were convicted of distributing obscene materials. Id. at 263, 101 S.Ct. 1097. The employees retained a lawyer "provided to them by their employer," were convicted, and sentenced to serve a term of probation which included fines. Id. at p. 266, 101 S.Ct. 1097. The employees failed to pay the fines, and the trial court provided them five days to pay arrearages or have their probation revoked. Id. The Supreme Court remanded the action for "a hearing to determine whether the conflict of interest that this record strongly suggests actually existed at the time of the probation revocation or earlier." Id. at p. 273, 101 S.Ct. 1097.[7] The Supreme Court reasoned that the "inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise" constituted a "clear possibility of a conflict of interest." Id. at 267, 101 S.Ct. 1097.
An inquiry into the source of Mulero's legal fees is appropriate. This case involves multiple firearms, controlled substances, and a substantial possibility that unindicted persons participated in the commission of the charged offenses. As the magistrate judge correctly observed, "there are people who would benefit from [Mulero's] silence." (Docket No. 190 at p. 33.) Mulero does not possess the means to pay for the legal fees of three privately retained attorneys. The Court is thus dutybound to ensure that any potential conflict arising from the payment of Mulero's legal fees is addressed to safeguard his Sixth Amendment rights, and the integrity of the judicial process. See Quintero v. United States, 33 F.3d 1133, 1135 (9th Cir. 1994) ("A drug conspiracy case involving large quantities of cocaine, fees paid by unknown third parties, and the potential for unindicted co-conspirators may be sufficient to demonstrate active representation of conflicting interests.").
B. The Evidentiary Hearing
Defense counsel's representations at the evidentiary hearing compound the Court's *190 concerns regarding the possibility of non-waivable conflicts of interest. At the start of the hearing, the magistrate judge stated that "the first question to be answered here today is who is paying [Mulero's] attorneys." (Docket No. 181 at p. 10.)[8] Rather than answer this straightforward question, Burgos challenged the magistrate judge's decision to convene a hearing, implied that defense counsel represented Mulero pro bono ,[9] suggested that "defense counsel is too effective for the Government because of the briefs and the objections [they] filed," and insinuated that the "Government [believed] that the person paying perhaps for [Mulero's] client's fees is a person upper in the ladder" of a drug trafficking organization. Id. at pp. 14-17. Before Burgos concluded his opening remarks, he stated that "[n]o one is going to testify because this [was Mulero's] position." Id. at p. 17. Ultimately, Burgos requested leave to identify Mulero's third-party benefactor to the magistrate judge ex parte. Id. at pp. 17-18. The magistrate judge rejected Burgos' ex parte proffer. Id. at p. 26. Lozada also refused to reveal the source of Mulero's attorneys' fees. Id. at p. 26.
The magistrate judge repeatedly instructed the courtroom deputy clerk to place Burgos under oath. Id. at pp. 29-30. Burgos refused, stating "that's not going to happen, Your Honor, I'm sorry." Id. at p. 30. Again, defense counsel requested that the magistrate judge accept an ex parte proffer. Id. at p. 31. The magistrate judge rejected defense counsel's request for a second time. Id. Lozada informed the magistrate judge that "Javier Cuyar-Olivo was the person who paid for [their] fees." Id. The magistrate judge once more ordered Burgos to take the stand. Id. Lozada and Burgos refused to do so, invoking their Fifth Amendment right against self-incrimination. Id. at pp. 31 and 34.[10] Burgos confirmed that Mulero's attorneys' fees "were paid for by Javier Cuyar-Olivo." Id.
Maestre testified that Mulero's mother, Gladys Vargas ("Vargas"), paid her $ 10,000 in cash to serve as Mulero's defense counsel pursuant to a verbal agreement. Id. at pp. 70-75. Although Maestre represented Mulero for less than two months, Vargas did not request a refund. Id. at p. 70.[11]
Vargas subsequently retained Cuyar as Mulero's defense counsel. Lozada served as Cuyar's intern to gain experience in criminal litigation. Id. at p. 39. Cuyar testified that he charged Vargas $ 15,000.00 to represent Mulero "up to either sentencing or dismissal." Id. at p. 45. Vargas purportedly withdrew $ 17,000.00 from her pension trust account at Home Depot. Id. at p. 46. Vargas paid Cuyar $ 10,000, followed by one payment of $ 2,500.00, and two payments of $ 1,250.00, all in cash and without a written agreement. Id. Maestre's and Cuyar's testimony establishes that Vargas paid a total of $ 25,000.00 in cash for Mulero's defense, $ 8,000.00 more than Vargas purportedly withdrew from the Home Depot pension account.
*191 After accepting a position at the Office of the Federal Public Defender for the District of Puerto Rico, Cuyar met with Mulero and Vargas. Id. at p. 38. Cuyar referred them to Burgos, requesting that Lozada remain on the case. Id. at p. 39. Burgos requested $ 5,000.00 to represent Mulero, agreeing "in fairness to give [Lozada] ten percent of [his] fees." Id. at p. 42. Cuyar "personally paid" Burgos, providing him with two personal checks for $ 2,000.00 and $ 500.00. Id. at p. 57; see Docket No. 159, Ex. 1 at pp. 2-3.
Before the evidentiary hearing concluded, the magistrate judge reiterated that Burgos and Lozada invoked the Fifth Amendment. (Docket No. 160 at p. 78.) Burgos and Lozada asserted that they refused to testify "[o]ut of an abundance of caution." Id. at pp. 78 and 80. The magistrate judge stated that:
[Burgos and Lozada] have both indicated that [they] raise the Fifth Amendment. I want to be abundantly clear to everyone in this room and that the record be clear that [Burgos and Lozada] refuse to take the stand, [to] be placed under oath because [they] understood that to answer the questions, [they] would be implicating [themselves] in criminal activity. That is the understanding of the Court and that is what the record will so reflect.
Id. at pp. 80-81. Burgos answered "yes." Id. at p. 81.
III. Burgos and Lozada are Disqualified
In support of his objection to the R & R, Mulero submitted a sworn statement conveying his desire that Burgos and Lozada continue to serve as defense counsel. (Docket No. 197, Ex. 2 at p. 4.) The Court agrees with the magistrate judge, however, that Burgos and Lozada "cannot engage in representation of a client when such representation exposes counsel to criminal liability or criminal prosecution." Id. at p. 39. Accordingly, Burgos and Lozada are DISQUALIFIED.
A. Invocation of the Fifth Amendment
Burgos and Lozada's invocation of the Fifth Amendment demonstrates that their personal interests are separate and potentially divergent from Mulero's interests. The right not to incriminate oneself is no trivial matter, to be invoked "out of an abundance of caution." (Docket No. 181 at pp. 78 and 80.) The Puerto Rico Association of Criminal Defense Attorneys contends that invocation of the Fifth Amendment "may not have been necessary, or the wisest or most elegant choice." (Docket No. 164, Ex. 1 at p. 14.) The Court will not speculate whether Burgos' and Lozada's actions were "necessary." Id. Both defense attorneys are versed in criminal law. By invoking the Fifth Amendment, Burgos and Lozada "show[ed] at the very least that [they themselves were] faced with some authentic danger of incrimination." United States v. Castro, 129 F.3d 226, 229 (1st Cir. 1997). Defense counsel displayed "reasonable cause to apprehend danger from a direct answer." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).
The United States District Court for the Southern District of New York addressed similar circumstances in United States v. Scala, 432 F.Supp.2d 403 (S.D.N.Y. 2006). Defense counsel invoked his Fifth Amendment right against self-incrimination "in response to a subpoena seeking records of payment of fees by or on behalf of [the defendant]." Id. at 405. Accordingly, the court disqualified defense counsel because "invocation of the Fifth Amendment demonstrates that his interest and those of his client probably diverge with respect to courses of action that inevitably arise in *192 criminal cases." Id., aff'd, United States v. Scala, 266 Fed. Appx. 41, 45 (2d Cir. Feb. 2, 2009) (Sotomayor, J.) (holding that "the district court did not err in finding that an actual or potential conflict existed," because "by invoking his Fifth Amendment right against self-incrimination, [defense counsel] was apparently concerned about his own misconduct (or perceived misconduct) relating to Scala's case"). Defense counsel's "good faith assertion of the privilege against self-incrimination is a representation that the witness fears that a response ... may tend to ensnare the witness in 'ambiguous circumstances.' " Id. (citing Grunewald v. United States, 353 U.S. 391, 421, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) ). Because defense counsel asserted his right against self-incrimination, the Court inferred that he "had a personal interest, separate and apart from that of his client, in seeking to avoid the subpoenaed documents and evidence to which they might lead coming to light." Id. at 406.
Whether Burgos and Lozada have violated a law or ethical standard is relevant to, but not dispositive of, the conflict of interest inquiry. See Gov't of the Virgin Islands v. Zepp, 748 F.2d 125, 136 (3rd Cir. 1984) ("Where there is no direct evidence of wrongdoing by trial counsel, it is not necessary to assume wrongdoing to conclude that he had an actual conflict of interest."). Burgos and Lozada's mere belief that revealing the source of their fees could subject them to criminal liability is sufficient for the Court to determine that they have "[placed themselves] in a position conducive to divided loyalties." United States v. Infante, 404 F.3d 376, 392 (5th Cir. 2005) ; see [U.S. v. ]Lanoue, 137 F.3d 656, 664 [ (1998) ] ("The district court did not abuse its considerable discretion in disqualifying [the defendant's] attorney in the face of a potential conflict of interest."). Mulero is entitled to defense counsel who are free to advocate on his behalf without fear that their receipt of legal fees to do so would subject them to criminal liability.
B. Disqualification is Appropriate
Model Rule of Professional Conduct 1.7 provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest" pertaining to the "personal interests of the lawyer." Model Rules of Prof'l Conduct R. 1.7(a)(2); see United States v. Mota-Santana, 391 F.3d 42, 45 (1st Cir. 2004) ("The existing body of law subjecting conflict of interest issues to the most scrupulous attention is based on the principle that a person cannot faithfully serve two masters with conflicting interests."). Disqualification of counsel "should be a measure of last resort." In re Grand Jury Proceedings, 859 F.2d at 1026 (internal quotation marks and citation omitted); United States v. Diozzi, 807 F.2d 10 (1st Cir. 1986) ("[W]e suggested that district court judges should exercise caution in disqualifying attorneys, especially if less serious means would adequately protect the government's interests."). The United States shoulders a "heavy burden" in demonstrating that disqualification is justified. Id.
The Court "may disqualify an attorney to prevent a lawyer's presence from tainting a trial, for perceived conflicts of interest, to protect the integrity of the judicial process, to enforce its rules against transgressors, or to maintain public confidence in the legal profession." United States v. Kouri-Pérez, 992 F.Supp. 511 (D.P.R. 1997) (Fusté, J.) (citing In re Bushkin Assocs., Inc., 864 F.2d 241, 246 (1st Cir. 1989) ). The Court should disqualify an attorney only "in the rare instance where other sanctions may not achieve the necessary effect." Id. at 512.
*193 In this case, however, disqualification will preserve the orderly administration of justice and Mulero's right to conflict-free representation. See In re Grand Jury Empaneled April 24, 601 F.Supp.2d 600, 605 (D.N.J. 2008) ("[I]t is within the discretion of the district judge to nip any potential conflict of interest in the bud.") (internal quotation and citation omitted). The magistrate judge provided defense counsel with an opportunity to address potential conflicts of interest. (Docket No. 181.) In response, Burgos and Lozada obstructed the inquiry. See United States v. Figaro-Benjamin, et al., No. 18-066, Docket No. 27 (D.P.R. Feb. 14, 2018) (Carreño-Coll, Mag. J.) (disqualifying defense counsel because he demonstrated a "lack of candor, [was] not forthcoming with the Court, and [was] evasive in addressing the Court's concerns" at a "hearing as to who had hired him"). Accordingly, the Court disqualifies Burgos and Lozada.
C. Mulero's Consent Cannot Waive the Conflict of Interest
A criminal defendant may waive a conflict of interest in certain circumstances. United States v. Saccoccia, 58 F.3d 754, 772 (1st Cir. 1995) ("A defendant may waive his right to assistance of an attorney unhindered by a conflict of interest.") (quoting Holloway v. Arkansas, 435 U.S. 475, 483 n.5, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) ). The Court, however, need not accept a defendant's waiver. See Laureano-Pérez, 797 F.3d at 56 (affirming district court's refusal to accept the defendant's waiver consenting to representation paid for by "the leader of the drug organization connected to [the defendant's] arrest").[12] For Burgos and Lozada to continue in this action, Mulero's waiver must be knowing and intelligent. See United States v. Levy, 25 F.3d 146, 151 (2nd Cir. 1994) ("If the court discovers that the attorney suffers from a severe conflict - such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation - the court is obliged to disqualify the attorney.").
Courts have "substantial latitude" to accept or reject waivers, "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163, 108 S.Ct. 1692 ; United States v. Alfonzo-Reyes, 592 F.3d 280 (1st Cir. 2010) (affirming the pretrial disqualification of defense counsel because the trial court identified "potential conflicts which may metamorphose into actual conflicts as the case progresses"). The Court must determine the sufficiency of Mulero's waiver "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between the parties are seen through a glass, darkly." Wheat, 486 U.S. at 162, 108 S.Ct. 1692.
Burgos and Lozada's invocation of the Fifth Amendment precluded the Court from conducting a more searching inquiry into the extent to which Burgos and Lozada may have any actual or potential conflicts. Consequently, a colloquy confirming that Mulero knowingly and intelligently *194 waives any conflict of interest is not feasible.
D. Mulero's Objection to the R & R
Mulero's objection to the R & R is unavailing. (Docket No. 197.) The objection to the R & R repeats the same arguments set forth in Mulero's motion to strike, maintaining that "there was absolutely nothing in the record ... to even suggest that a third party who had a conflicting interest in the case was paying defense counsel." (Docket No. 146; Docket No. 197 at p. 13.) The Court disagrees.
The record is replete with evidence establishing that a conflict of interest inquiry is proper. See Supra Part III(A). Defense counsel and the PRACDL invite the Court to disregard discernible conflicts of interest, abdicating its responsibility to ensure that this proceeding complies with the Sixth Amendment. See Wheat, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 ; Wood, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220. The Court declines their invitation to do so.
Mulero's objection to the R & R is an attempt to relitigate the evidentiary hearing by providing evidence that was readily available before the inquiry commenced, but was never presented to the magistrate judge. (Docket No. 197.) For example, Vargas and Mulero submitted sworn statements regarding the source of Burgos and Lozada's attorneys' fees. (Docket No. 197, Exs. 1 and 2.) Neither Vargas nor Mulero, however, testified at the evidentiary hearing. Mulero's "position" at the hearing before the magistrate judge was that no one would testify. (Docket No. 181.) Mulero also provided a detailed Home Depot "Future Builder" statement with Vargas' name and account information. (Docket No. 197, Ex. 3.) The statement corresponds to the time period between April 1, 2017 and June 30, 2017, and was available well before the September 17, 2018 evidentiary hearing. (Docket No. 158.)
The Court will not consider the evidence submitted in Mulero's objection to the R & R. Although Mulero is entitled to a de novo review to specific parts of reports and recommendations to which he properly objects, he is "not entitled to a de novo review of an argument never raised." See Borden v. Sec'y. of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) ; 28 U.S.C. § 636(b)(1)(C). Permitting parties to sit on their hands until after a magistrate judge has issued a R & R would severely undermine the utility, and the purpose, of referring motions to magistrate judges. Id. Accordingly, "parties must take before the magistrate [judge], 'not only their best shot but all of their shots.' " Id. (quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D. Me. 1984) ). Because Mulero failed to submit the sworn statements and the Home Depot statement to the magistrate judge, he forfeited any opportunity to present substantive arguments pertaining to this evidence. See id.; Crispin-Taveras[ v. Municipality of Carolina], 647 F.3d [1] 7 [ (2011) ]; Loc. Civ. R. 7(b). Consequently, the Court will not consider this evidence.
IV. Order to Show Cause
Burgos and Lozada frustrated the evidentiary hearing by defying the magistrate judge's orders. (Docket No. 181.) Burgos declared that "no one is going to testify because this is my client's position." (Docket No. 181 at p. 17.) Defense counsel repeatedly flouted the magistrate judge's order to take the stand. (Docket No. 181 at pp. 29-36.) The following exchange demonstrates defense counsel's defiance.
Magistrate Judge: That's fine but I need to place you under oath and you can be subject to some questions. Frankly, it's *195 just identifying the name alone isn't necessarily what is going to make - put the Court in a position to determine when there's conflict and who is this individual. What's the relationship to this defendant?
Burgos: But that's easy, Your Honor.
Magistrate Judge: Then let me put you under oath and you may answer, answer questions.
Burgos: There's no need for that because we have documental evidence and -
Magistrate Judge: I need someone to be placed under oath so that they can answer questions. [Assistant United States Attorney Jonathan Gottfried], who is it that you're going to call first?
Gottfried: Your Honor, I call Jedrick Burgos first.
Magistrate Judge: All right, Mr. Burgos.
Burgos: That's not going to happen, Your Honor, I'm sorry.
Lozada: Your Honor, I would like - may I please the Court? This puts both of us, Mr. Burgos and I, in a very uncomfortable position I makes us become witness of this case while we are -
...
Magistrate Judge: Call you first witness.
Gottfried: I am going to call Jedrick Burgos.
Magistrate Judge: Mr. Burgos, would you please take the stand?
Lozada: You Honor, once again -
Burgos: I plead the Fifth, You Honor. We're in the position that this puts us in a very uncomfortable position. It makes us become witnesses in this case where we are defendant's attorneys in this case and I believe its unethical.
(Docket No. 181 at pp. 29-31.) Lozada also refused to take the stand. Id. at p. 34.
Neither the attorney-client privilege nor the Model Rules of Professional Conduct precluded Lozada or Burgos from testifying at the evidentiary hearing. Fee agreements are not generally subject to attorney-client privilege. Montgomery Cty. v. Microvote Corp., 175 F.3d 296, 304 (3rd Cir. 1999) ("The attorney-client privilege does not shield fee agreements."); In re Grand Jury Subpoenas, 906 F.2d 1485, 1492 (10th Cir. 1990) (holding that "the attorney-client privilege does not prohibit the government from asking if a family member paid part of the client's fee," because "[t]here is no attorney-client privilege between an attorney and a member of the client's family"); United States v. Cedeño, 496 F. Supp. 2d 562, 567 (E.D. Pa. 2007) ("[T]he Court concludes that by disclosing the identities of the defendants' benefactors and their fee agreements, no confidential communication between [the defendants' attorney] and his clients would be disclosed"). Model Rule of Professional Conduct 3.7 provides that:
a lawyer shall not act as an advocate at trial in which the lawyer is likely to be a necessary witness unless ... the testimony relates to the nature and the value of legal services rendered in the case.
Model Rule Prof'l Conduct 3.7(a)(2) (emphasis added); see In reGrand Jury Proceedings in Matter of Freeman, 708 F.2d 1571 (11th Cir. 1983) (affirming the district court's order that "all three [defense attorneys] testify as to matter outside the scope of the privilege, including communications between the attorney and those furnishing the legal representation for the client witness, and ordered each attorney to testify as to the identify of his client and the fee arrangement with such client").
The Fifth Amendment is a shield against self-crimination, not a sword to avoid taking stand or to frustrate the Court's legitimate *196 inquiry. Castro, 129 F.3d at 229 ("The privilege cannot be invoked on a blanket basis."). Burgos and Lozada improperly invoked the Fifth Amendment by refusing to be placed under oath. See In re Morganroth, 718 F.2d 161, 170 (6th Cir. 1983) ("Statements under oath, in person or by affidavit, are necessary because the present penalty of perjury may be the sole assurance against a spurious assertion of the [Fifth Amendment] privilege."); SEC v. First Com. Grp., 659 F.2d 660, 668 (5th Cir. 1981) ("The Court has held that such a blanket assertion of the [Fifth Amendment] privilege is insufficient to relieve a party of the duty to respond to questions put to him, stating that even if the danger of self-incrimination is great, (the party's) remedy is not to voice a blanket refusal to produce his records or testify. Instead, he must present himself with his records for questioning, as to each question and each record reelect to raise or not raise the defense.") (internal citation and quotation omitted).
This Court possesses the "judicial authority to sanction counsel for litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of the proceeds." United States v. Kouri-Pérez, 187 F.3d 1, 11 and 30 (1st Cir. 1999) ("Although it may be difficult on occasion to draw the line between zealous advocacy and unacceptable courtroom tactics, the line must be drawn."). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, decorum, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).
Misconduct by an attorney in any matter pending before the Court "may be dealt with directly by the judge in charge of the matter." Loc. R. 83E(d). An order imposing discipline may include suspension, public or private reprimand, monetary penalties, continuing legal education, counseling, or "any other condition [that] the Court deems appropriate." Loc. R. 83E(c). The Model Rules of Professional Conduct instruct attorneys to "demonstrate respect for the legal system and for those who serve it, including ... other lawyers" and to "maintain[ ] a professional, courteous and civil attitude toward all persons involved in the legal system." Model Rules of Prof'l Conduct pmbl. ¶¶ 5, 9. Model Rule of Professional Conduct 8.4(d). Rule 8.4 provides that it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Id. R. 8.4(d).
The Court finds that Burgos and Lozada disrupted the efficient management of the evidentiary hearing before Magistrate Morgan, and were less than candid with the Court by suggesting that they represented Mulero pro bono. See Kouri-Pérez, 187 F.3d at 30; Model Rule Prof'l Conduct 3.3; Docket No. 181 at p. 14. Their defiant, irreverent conduct prejudiced the administration of justice. Model Rule Prof'l Conduct 8.4. Accordingly, Burgos and Lozada are ORDERED TO SHOW CAUSE as to why they should not each be fined $ 250.00.
V. Conclusion
For the reasons set forth above, the R & R is ADOPTED. (Docket No. 190.) Accordingly, Burgos and Lozada are DISQUALIFIED from representing Mulero in this criminal action. Mulero is entitled to court-appointed counsel from the CJA panel. The Court ORDERS Burgos and Lozada to return all the fees paid for their representation in this action. Burgos and Lozada are ORDERED TO SHOW CAUSE as to why each should not be fined $ 250.00 no later than February 25, 2019.
*197 A copy of this Opinion and Order shall be provided to each district and magistrate judge of this Court.
IT IS SO ORDERED.

Jeremy Smith ("Smith"), a special agent at the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), prepared an affidavit in support of the criminal complaint. (Docket No. 1, Ex. 1.) The following allegations derive from special agent Smith's affidavit.

Law enforcement officers encountered Merced in the living room and Mulero in the bedroom. (Docket No. 1, Ex. 1 at p. 1.)

The Criminal Justice Act ("CJA") provides that "[r]epresentation shall be provided for any financially eligible person who .... is charged with a felony." 18 U.S.C. § 3006A(a)(1)(A). According to the Administrative Office of the United States Courts, "the person seeking appointment of counsel has the responsibility of providing the court with sufficient and accurate information upon which the court can make an eligibility determination."Guide to Judiciary Policy, Vol. 2, Defender Services, Part A Guidelines for Administrating the CJA and Related Statutes, available at https://www.uscourts.gov/rulespolicies/judiciary-policies/cja-guidelines/chapter-2-ss-210-representation-under-cja# a210_40 (last visited February 11, 2019).

Magistrate Judge Bruce M. McGiverin granted Mulero bail in the amount of $ 10,000. (Docket No. 12.) At the de novo bail hearing, however, the Court denied bail and ordered that Mulero remain in custody. (Docket No. 32.)

The Court ultimately adopted the magistrate judge's recommendation to deny the defendants' joint motion to suppress. (Docket No. 203.)

See also United States v. Kar, 851 F.3d 59, 64 (1st Cir. 2017) ("[T]he Sixth Amendment does not provide an unfettered right to appointed counsel of a defendant's choosing."); In re Grand Jury Proceedings, 859 F.2d 1021, 1023 (1st Cir. 1988) (holding that an actual and a "realistic potential for conflict of interest ... may override a defendant's Sixth Amendment right freely to choose his lawyer").

In Wood, the Supreme Court underscored that courts possess the authority to conduct an inquiry regarding the source of a criminal defendant's attorneys' fees. 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). The petition for certiorari requested that the Supreme Court determine whether the revocation of "an indigent's probation because he has failed to make regular payments toward the satisfaction of the fine" contravened the Equal Protection Clause. Wood, 450 U.S. at 271, 101 S.Ct. 1097 (White, J., dissenting). The possibility that defense counsel "may have deprived the petitioners of due process and their constitutional right to counsel," however, compelled the Supreme Court to address potential conflicts of interest sua sponte. Id. ("Since the record in this case suggests that petitioners may be in their present predicament because of the divided loyalties of their counsel, we have concluded it is inappropriate to reach the merits of this difficult equal protection issue.").

Maestre and Cuyar remained outside the courtroom while the magistrate judge questioned Burgos and Lozada. (Docket No. 181 at p. 4.)

As the evidence at the evidentiary hearing clearly demonstrated, Burgos and Lozada did not represent Mulero pro bono. Burgos's suggestion that they did was a clear attempt to mislead the Court. (Docket No. 181 at 14.)

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S.Const. amend V.

According to Vargas, Maestre reimbursed "part of the fees" after the evidentiary hearing. (Docket No. 197, Ex. 1 at p. 4.)

See also In re Grand Jury Proceedings, 859 F.2d at 1023 ("[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that [the Court] may decline a proffer or waiver."); United States v. Matta-Timmins, 81 F.Supp.2d 193, 195 (D. Mass. 2000) ("A waiver by the defendant of the conflict is not a panacea."); United States v. Snyder, 707 F.2d 139, 143 (5th Cir. 1983) ("A waiver, however, will not eliminate this court's responsibility to balance the right to one's own counsel with the court's interest in preserving the integrity and the fair administrate of justice.").